1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT LEE NELSON

Petitioner,

v.

JARED D. LOZANO,

Respondent.

No.  2:19-cv-01618 MCE DB

FINDINGS AND RECOMMENDATIONS

Petitioner Robert Lee Nelson, a state prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of convictions entered on January 19, 2017 in the Placer County Superior Court. Petitioner was convicted of criminal threats, corporal injury to cohabitant, unlawful firearm use in violation of a restraining order, and resisting arrest. (ECF No. 16-3 at 232–38.) Petitioner now claims: (1) the trial court violated petitioner's right to due process under the Fifth and Fourteenth Amendments and right to a fair trial under the Sixth Amendment when it granted the prosecution's request to reopen the case to admit evidence after petitioner made a Penal Code Section 1118.1 motion for judgment of acquittal, and (2) the trial court violated petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments when it admitted testimonial evidence at trial that petitioner had repeated contacts with the police and was dangerous. For the reasons set forth below, this court recommends denying the petition.

1

1           **BACKGROUND**

2   **I.      Facts Established at Trial**

3           The California Court of Appeal for the Third Appellate District provided the following

4   summary of the facts presented at trial:

5               Defendant was charged with five counts: assault with a firearm,
                criminal threats, corporal injury to a cohabitant, misdemeanor
6               unlawful firearm activity in violation of a restraining order, and
                resisting a police officer. A jury deadlocked on the assault count but
7               found defendant guilty of the remaining counts. Defendant's conduct
                giving rise to the five counts occurred over a two-week period in
8               September 2016.[1]

9               *Testimony supporting the charges*

10              As to the deadlocked count, assault with a firearm, the victim
                testified that defendant drove him to defendant's home on September
11              12. While there, defendant started yelling insults at him. When
                defendant brought out a shotgun, the victim texted his mother for a
12              ride. Defendant pointed a shotgun at the victim and then hit him in
                the head at least seven times with it. The victim ran away.
13
                As to the threats count, the testimony was that a few days later, the
14              victim's mother told the police that defendant had left her a message
                saying: "This is Robert Lee Nelson. Save this message bitch cause
15              I'm going to be the one responsible for [the victim's] murder and
                yours. You understand me pieces of fuckin shit? See you soon."
16              Defendant also left a message for the victim's 73-year-old
                grandmother: "I am going to kill your grandson . . . and you too."
17              When police contacted defendant, he said that "law enforcement
                knew who he was and that he was tired of people fucking with him,
18              . . . and if it didn't stop, somebody may wind up dead."

19              The corporal injury count was based on defendant's attack on his
                fiancée three days later. Wearing cowboy boots, he kicked and hit
20              her on the face, head, and torso. He held a shotgun as he beat her. A
                neighbor described her injuries as "disturbing" and a "horror show."
21
                Four days after that, an officer served defendant with a temporary
22              restraining order. He was told to relinquish his firearms within 24
                hours. Defendant chuckled and said that was not going to happen. At
23              the time, he had a holstered, loaded revolver with him and a revolver
                inside the car he was working on.
24
                A week later, officers went to defendant's home to arrest him for
25              assault with a deadly weapon. An arresting officer testified that:
                "There was some concern about going up onto his property because
26              . . . he's been known to carry guns. I have had contact with him in

27   _____
     [1] Except as otherwise noted, date references are to 2016.
28

                                        2

the past at his property, and he's had guns on him, and the place is -- tactically, it's kind of a nightmare so if he -- if we were to go physically to the house to effect the arrest, it would have been pretty dangerous for us just because of all the stuff that's in the yard, in the house itself." [2]

The officers opted to trick defendant into coming to the driveway. They told him they needed his signature on a citizen's arrest form. Defendant approached the driveway but refused to come further. Officers could see a pistol in his waistband. He was told to get rid of the gun, and he put it down.

An officer drew his gun and told defendant he was under arrest. Defendant ran, but he was soon subdued by a police dog. After his arrest, a shotgun was found nearby, pointing down the roadway. An officer testified the shotgun was facing toward the driveway, so "if a person were to pick it up, just by picking it up in that position, the barrel would already be pointed in a direction . . . for somebody like me coming up the driveway."

Defendant's conduct the day of his arrest formed the basis for his unlawful firearms and resisting charges.

*Defendant's testimony*

At trial, defendant testified that his .44-caliber firearm "[a]lways is on my hip." He added, "[w]e had a lot of problems on that property, and I always had a firearm on my hip since I've been there," and, "I owned firearms my whole life."

He admitted leaving the message that he was going to kill the victim and his mother, but maintained it was because he found "aggressive texting" to two minors on the victim's cell phone. He described the victim's mother ("this chick") to the jury as "livid" and "flipping out."

When asked if he recalled inflicting his fiancée's injuries, he answered: "Yeah, kind of, I guess. I mean, yeah. Yeah. Fuck it. It wasn't real, you know. I didn't think it was real . . . ." He later said, "for all intents and purposes, that was me but it wasn't. I had zero control." Based on a jury question, defendant was asked if he was undergoing treatment for any psychological disorders. He replied, "No. I wish I would have."

At other points defendant testified, "I got locked up for habitual traffic offending and put into a jail I had been to 20 times. All the

---

[2] Similar testimony from the officers included: "There had been other incidents at the defendant's house . . . . [¶] [B]ased on things that I had read, other police reports and information I gained, that it would not have been . . . prudent just to walk onto the property and knock on the door . . . ." And, "We had prior knowledge that there were firearms involved, so we thought the safer bet would be to get the defendant away from the house to preclude any barricaded situation, make it more dangerous than it was, to get him into custody."

deps knew me." He also mentioned being placed in administrative segregation for missing a court date, having been charged with menacing, and having been on probation.

(ECF No. 1-2 at 44–47); People v. Nelson, No. C083941, 2018 WL 1165912, at *1–2 (Cal. Ct. App. Mar. 6, 2018).

## II.  Procedural Background

### A.  Judgment

A jury convicted petitioner of criminal threats, corporal injury to cohabitant, unlawful firearm use in violation of a restraining order, and resisting arrest. (ECF No. 16-3 at 220–22.) It also found that petitioner inflicted great bodily injury during the commission of domestic violence. (Id. at 221.) The trial court imposed an aggregate prison term of eight years and eight months. (Id. at 235.)

### B.  State Appeal and Federal Proceedings

Petitioner timely appealed his convictions on the following grounds: (1) trial court violated petitioner's right to due process under the Fifth and Fourteenth Amendment by granting the prosecution's request to reopen its case after petitioner's Penal Code Section 1118.1 motion for judgment of acquittal on one count, and (2) the trial court's admission of several statements suggesting that petitioner had prior contacts with police and was extremely dangerous violated his right to due process under the Fifth and Fourteenth Amendment and right to counsel under the Sixth Amendment. (ECF No. 16-4.) The California appellate court affirmed the judgment. (ECF No. 16-7.) Petitioner sought review in the California Supreme Court. (ECF No. 16-8.) On May 23, 2018, the California Supreme Court summarily denied review. (ECF No. 16-9.) Petitioner did not seek habeas corpus relief in state court.

The present petition was filed on August 21, 2019. (ECF No. 1.) Respondent has filed an answer. (ECF No. 15.) Petitioner filed a traverse on March 19, 2020. (ECF No. 22.)

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

A court can entertain an application for a writ of habeas corpus by a person in custody under a judgment of a state court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not

1    available for an alleged error in the interpretation or application of state law. See Wilson v.

2    Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v.

3    California, 202 F.3d 1146, 1149 (9th Cir. 2000) (stating that "a violation of state law standing

4    alone is not cognizable in federal court on habeas.").

5           This court may not grant habeas corpus relief unless the adjudication of the claim:

6                   (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
7                   determined by the Supreme Court of the United States; or

8                   (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
9                   State court proceeding.

10   28 U.S.C. § 2254(d). For purposes of applying § 2254(d)(1), "clearly established federal law"

11   consists of holdings of the United States Supreme Court at the time of the last reasoned state court

12   decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.

13   2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). Circuit court precedent "'may be

14   persuasive in determining what law is clearly established and whether a state court applied that

15   law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th

16   Cir. 2010)). But it may not be "used to refine or sharpen a general principle of Supreme Court

17   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall

18   v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam) (citing Parker v. Matthews, 567 U.S. 37 (2012));

19   see also Carey v. Musladin, 549 U.S. 70, 76–77 (2006). Nor may circuit precedent be used to

20   "determine whether a particular rule of law is so widely accepted among the Federal Circuits that

21   it would, if presented to th[e] [Supreme] Court, be accepted as correct." Marshall, 569 U.S. at 64.

22          A habeas corpus application can invoke § 2254(d)(1) in two ways. First, a state court

23   decision is "contrary to" clearly established federal law if it either applies a rule that contradicts a

24   holding of the Supreme Court or reaches a different result from Supreme Court precedent on

25   "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting

26   Williams, 529 U.S. at 405–06). Second, "under the 'unreasonable application' clause, a federal

27   habeas court may grant the writ if the state court identifies the correct governing legal principle

28   from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the

5

prisoner's case.'" <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (quoting <u>Williams</u>, 529 U.S. at 413); <u>Chia v. Cambra</u>, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 120 S. Ct. at 1522; <u>see also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Andrade</u>, 538 U.S. at 75. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 786–87.

A petitioner may also challenge a state court's decision as being an unreasonable determination of facts under § 2254(d)(2). <u>Hibbler v. Benedetti</u>, 693 F.3d 1140, 1146 (9th Cir. 2012). Challenges under this clause fall into two categories; first, the state court's findings of fact "were not supported by substantial evidence in the state court record," or second, the "fact-finding process itself" was "deficient in some material way." <u>Id.</u>; <u>see also</u> <u>Hurles v. Ryan</u>, 752 F.3d 768, 790–91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" category, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. <u>Hibbler</u>, 693 F.3d at 1146 (9th Cir. 2012) (quoting <u>Taylor v. Maddox</u>, 366 F.3d 992, 999–1000 (9th Cir. 2004), <u>overruled on other grounds by</u> <u>Murray v. Schriro</u>, 745 F.3d 984, 999–1001 (9th Cir. 2014)). The "fact-finding process" category, however, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." <u>Hibbler</u>, 693 F.3d at 1146-47

6

1  (quoting <u>Lambert v. Blodgett</u>, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold

2  an evidentiary hearing does not automatically render its fact-finding process unreasonable. <u>Id.</u> at

3  1147. Further, a state court may make factual findings without an evidentiary hearing if "the

4  record conclusively establishes a fact or where petitioner's factual allegations are entirely without

5  credibility." <u>Perez v. Rosario</u>, 459 F.3d 943, 951 (9th Cir. 2006) (citing <u>Nunes v. Mueller</u>, 350

6  F.3d 1045, 1055 (9th Cir. 2003)).

7      If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews

8  the merits of the claim de novo. <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008); <u>see</u>

9  <u>also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 737 (9th Cir. 2008) (en banc). For claims upon which a

10  petitioner seeks to present new evidence, the petitioner must meet the standards of 28 U.S.C. §

11  2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State

12  court proceedings" and by meeting the federal case law standards for the presentation of evidence

13  in a federal habeas proceeding. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 186 (2011).

14      This court looks to the last reasoned state court decision as the basis for the state court

15  judgment. <u>Stanley</u>, 633 F.3d at 859; <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).

16  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from

17  a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

18  reasoning of the last decision.'" <u>Edwards v. Lamarque</u>, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

19  banc) (quoting <u>Barker v. Fleming</u>, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim

20  has been presented to a state court and the state court has denied relief, it may be presumed that

21  the state court adjudicated the claim on the merits in the absence of any indication or state-law

22  procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. This presumption may be

23  overcome if "there is reason to think some other explanation for the state court's decision is more

24  likely." <u>Id.</u> at (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)). Similarly, when a state

25  court decision rejects some of petitioner's claims but does not expressly address a federal claim, a

26  federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on

27  the merits. <u>Johnson v. Williams</u>, 568 U.S. 289, 293 (2013). When it is clear that a state court has

28  not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. §

2254(d) does not apply, and a federal habeas court reviews the claim de novo. <u>Stanley</u>, 633 F.3d at 860.

<strong>ANALYSIS</strong>

Petitioner asserts two grounds for relief: (1) the trial court violated petitioner's right to due process under the Fifth and Fourteenth Amendments and right to a fair trial under the Sixth Amendment when it granted the prosecution's request to reopen the case to admit evidence after petitioner made a Penal Code Section 1118.1 motion for judgment of acquittal, and (2) the trial court violated petitioner's right to due process under the Fifth and Fourteenth Amendments and right to counsel under the Sixth Amendment when it admitted evidence at trial that petitioner had repeated contacts with the police and was dangerous. (ECF No. 1 at 17–24; ECF No. 1-2 at 15–40.)

## I.   Prosecution's Motion to Reopen Case After Petitioner's Section 1118.1 Motion

Petitioner argues that the appellate court made an unreasonable determination of facts when it decided that the trial court did not err in allowing the prosecution to reopen its case after petitioner's Penal Code Section 1118.1 motion. (ECF No. 1-2 at 19–26.)

### A.   State Court Opinion

Petitioner raised this claim in his direct appeal. In the last reasoned state court decision, the California Court of Appeal considered and rejected the claim:

<em>Allowing the Prosecution to Reopen</em>

Defendant first contends the trial court erred in granting the prosecution's request to reopen its case to admit evidence regarding the temporary restraining order, after the defense moved for judgment of acquittal. Although we do not condone the careless presentation of evidence such as that seen here, the trial court acted within its discretion when it allowed the correction at issue in this case, as we explain.

A. *Background*

The prosecution's final witness, a deputy sheriff, testified to serving a restraining order on defendant on September 22.[] The deputy was shown a copy of exhibit 31, which he identified as the restraining order he had served.

On cross-examination, the deputy conceded the judicial signature on the restraining order was dated October 25, and the order stated that

8

it " 'starts on the date next to the judge's signature.' " The People rested after the deputy's testimony. The defense immediately brought a section 1118.1 motion for judgment of acquittal, arguing defendant did not violate the restraining order identified as exhibit 31 because it did not take effect until October 25.

The prosecutor responded that defendant had been served with a temporary restraining order on the date at issue--September 22--but that the prosecutor had inadvertently presented the subsequently issued actual restraining order as exhibit 31. She noted the temporary restraining order contained the same language and included the same firearm restriction as the actual order. She asked the court's permission to reopen her case to correct the error. She noted the deputy was still present, and it would take no more than five minutes to correct the error. Defendant objected on the grounds of late discovery.

The trial court found good cause to reopen. It noted the file contained both orders and had been available before trial for both sides to review. Presenting the wrong restraining order was a clerical mistake, and there was clear testimony that a restraining order had been served and defendant had been told to surrender his guns prior to his arrest. The court added that clarification was needed before defendant presented his case.

The deputy thereafter identified the newly presented exhibit 32 as the temporary restraining order he had served on defendant September 22, noting that it had been filed with the Superior Court on September 20.

B. *Analysis*

A trial court has broad discretion to order a case reopened, even after a section 1118.1 motion is made, so long as the court is convinced that the failure to present evidence was a result of inadvertence or mistake and not an attempt to gain tactical advantage. (*People v. Riley* (2010) 185 Cal.App.4th 754, 764-766 (*Riley*); §§ 1093, 1094 [setting forth trial order and procedure but providing that the trial court may depart therefrom for good reasons within its "sound discretion"].) " 'No error results from granting a request to reopen in the absence of a showing of abuse.' " (*Riley*, at p. 764.)

In reviewing a trial court's exercise of discretion, we consider factors including the stage of the proceedings when the motion was made, the diligence of the moving party in discovering the new evidence, the prospect the jury would accord it undue emphasis, and the evidence's significance. (*Riley, supra,* 185 Cal.App.4th at pp. 764-765.)

Here, the trial court acted within its discretion in allowing the prosecution to reopen its case. The error was discovered and corrected shortly after it occurred and before the start of the defense case. The error was clerical, in that it amounted to presenting the later version of the same document, and--critically--did not alter the nature of the accompanying testimony. The error was unlikely to be

9

afforded undue emphasis by the jury. And nothing indicates the error was an attempt to gain tactical advantage.

Defendant maintains that by moving for judgment of acquittal, and in doing so pointing out deficiencies in the prosecution's case, his trial counsel became an unwitting agent in his conviction. Therefore, he argues, the prosecution should not have been permitted to reopen following his section 1118.1 motion. In support, he points to *People v. Belton* (1979) 23 Cal.3d 516 and *People v. Martinez* (1982) 132 Cal.App.3d 119 and argues we should not follow *Riley*, a case decided by the Fourth District.

In *Belton*, following the prosecution's case, defendant moved for judgment of acquittal but did not cite a specific ground. (*People v. Belton, supra*, 23 Cal.3d at pp. 519, 521.) The trial court summarily denied the motion; Belton was ultimately convicted and appealed. (*Id*. at p. 519.) The Supreme Court held that a defendant need not provide a specific ground in moving for judgment of acquittal. Our high court explained that to *require* a defendant to provide specific grounds would force him or her to choose between (1) specifying the defects in the prosecution's case, spurring the prosecution to reopen its case to cure the defect, (2) making no motion and resting, sacrificing the right to make a defense, or (3) making no motion, and proceeding to present a defense. (*Id*. at p. 521.) *Riley* did not contradict *Belton's* holding; *Riley* did not purport to *require* a defendant to specify the grounds on which his or her motion for acquittal is made.

In *Martinez,* another appellate court held that under *Belton* defendant's motion for acquittal was procedurally adequate despite its failure to reference the key deficiency in the People's case and the fact that the motion, as made, actually "direct[ed] the court's attention to other considerations." (*People v. Martinez, supra*, 132 Cal.App.3d at p. 127.) In urging the Supreme Court to reconsider its decision in *Belton*, the *Martinez* court noted: "The thought occurs to us that rather than deprive the trial court of specification of reasons for the motion, a simpler solution, equally fair to the defendant, would be to require the defendant to specify reasons for the motion but deny the People the right to reopen for any reason so specified." (*Id*. at p. 129.) This statement is clearly dicta; *Martinez* followed *Belton* and declined to require defense counsel to state accurate grounds for the motion, despite "[r]ecognizing the inherent unfairness to this exceedingly conscientious trial judge whose mental set was diverted from the issue which we now address." (*Id*. at p. 128.)

Neither *Belton* nor *Martinez* (which precede *Riley* by decades) purport to decide the issue presented in *Riley*; that is, whether a court may permit the People to reopen after a motion for judgment of acquittal. Cases are not authority for propositions not considered therein. (*Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 437 fn. 11.)

In *Riley*, a marijuana possession case, the trial court permitted the prosecution to reopen its case after the defense moved for judgment

1
2
3
4
5
6
7

of acquittal at the close of the prosecution's case, arguing the prosecution had failed to prove Riley possessed a usable amount of marijuana (though the prosecution mistakenly believed such testimony had been provided). (*Riley, supra,* 185 Cal.App.4th at pp. 759-760.) There had, however, been testimony that Riley possessed .47 grams of marijuana. (*Ibid.*) The trial court allowed the prosecution to reopen, explaining whether .47 grams was a useable amount did not appear to have been an issue in dispute, and the defense knew the amount before trial. (*Id.* at p. 763.) The appellate court explained, "the fact that the defendant moved for judgment of acquittal pursuant to section 1118.1 should not categorically prohibit the trial court from exercising the discretion granted to it under sections 1093 and 1094." (*Id.* at p. 766.)

8
9
10

Neither *Belton* nor *Martinez* compels the conclusion that *Riley* was wrongly decided. We see no abuse of the trial court's discretion in allowing the prosecution to reopen to correct its mistake of presenting the temporary rather than the actual restraining order to the deputy for identification.

11 (ECF No. 1-2 at 47–51.)

12 **B. Discussion**

13   Whether the trial court had discretion to reopen the case after defendant's motion is a

14 matter of state law. Under Penal Code Section 1118.1, a defendant can make a motion "at the

15 close of the evidence on either side and before the case is submitted to the jury for decision" for

16 "judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the

17 evidence then before the court is insufficient to sustain a conviction of such offense or offenses

18 on appeal." CAL. PENAL CODE § 1118.1. Although Penal Code Section 1093 outlines the usual

19 order of jury trial proceedings, Section 1094 expressly permits the trial court to deviate from the

20 usual order. Id. at § 1094 ("When the state of the pleadings requires it, or in any other case, for

21 good reasons, and in the sound discretion of the court, the order prescribed in Section 1093 may

22 be departed from.")

23   Under California law, courts have broad discretion to reopen a case and allow new

24 evidence. People v. Riley, 185 Cal. App. 4th 754, 764 (2010) (citing People v. Goss, 7 Cal. App.

25 4th 702, 706 (1992)). Absent a showing of abuse, there is no error. Id. (citing People v.

26 Rodriguez, 152 Cal. App. 3d 289, 295 (1984). Courts consider several factors when reviewing the

27 exercise of the trial court's discretion: the stage of the proceedings when the motion was made,

28 the diligence of the party in identifying the new evidence, undue emphasis by the jury, and the

1  significance of the evidence. Id. In Riley, the court held that "section 1118.1 does not place a

2  limitation on the trial court's discretion under sections 1093 and 1094 to permit either party to

3  reopen its case for good cause and when justice so requires." Id. at 766. "The court always has

4  discretion to allow the prosecution to reopen after a section 1118 motion so long as the court is

5  convinced that the failure to present evidence on the issue was a result of 'inadvertence or

6  mistake on the part of the prosecutor and not from an attempt to gain a tactical advantage over

7  [the defendant].'" Goss, 7 Cal. App. 4th at 708 (1992) (citing Ceja, 205 Cal. App. 3d at 1304)).

8  Section 1118.1 was not intended to be a "tactical trap when the prosecution inadvertently fails to

9  present evidence in its possession." Riley, 185 Cal. App. 4th at 766; see also People v. Castaneda,

10  No. E050362, 2011 WL 675925, at *6–8 (Cal. Ct. App. Feb. 23, 2011).

11         This court concludes that the state court's decision to reopen the case after defendant's

12  motion for acquittal was not an unreasonable determination of the facts. Defendant was charged

13  with unlawful firearm use in violation of a restraining order. The temporary restraining order was

14  served on September 22, 2016 and required petitioner to relinquish all firearms within 24 hours.

15  (ECF No. 16-3 at 70–74, 86–88.) The civil restraining order included the same firearm provision

16  but was dated October 25, 2016. (ECF No. 16-3 at 75, 85.) During the prosecutor's case-in-chief,

17  a witness testified to the terms of the temporary restraining order. (ECF No. 16-3 at 70–74.) The

18  prosecutor, however, inadvertently failed to admit the temporary restraining order into evidence;

19  he only admitted the civil restraining order. (Id.) After the prosecutor rested his case, defendant

20  moved to acquit on the charge. (Id. at 78–80.) The trial court granted the prosecutor's motion to

21  reopen the case to admit the temporary restraining order into evidence, finding that it was a

22  "clerical mistake." (Id. at 82–83.) As the state court noted, reopening the case did not alter the

23  evidence already in the record nor was it an attempt by the prosecutor to gain any tactical

24  advantage over defendant. Petitioner challenges none of the state court's findings.

25         Petitioner also fails to cite to any Supreme Court authority that holds reopening a case

26  after a motion for acquittal violates defendant's Fifth, Sixth, or Fourteenth Amendment rights.

27  Petitioner cites to United States v. Bayer, 331 U.S. 532 (1947), but that case is inapposite. In

28  Bayer, the Supreme Court determined that it was not reversible error to exclude an "unsworn,

1    unverified slip to be put into evidence four hours after the case had been submitted to the jury."

2    Id. at 539. That case did not concern a state court's discretion to reopen a case after defendant's

3    motion for acquittal.

4        Petitioner relies heavily on People v. Belton, 23 Cal. 3d 516 (1979) and People v.

5    Martinez, 132 Cal. App. 3d 119 (1982) to support his petition. He states that "contrary to the

6    appellate court's contentions, in the instant case, the reasoning of [Riley] is wrong" and "the

7    better reasoning of the California Supreme Court in [Belton] should be applied to find that a trial

8    court abuses its discretion, when it permits the prosecution to reopen its case in chief to supply

9    the missing proof that defendant raised in his motion for judgment of acquittal." (ECF No. 1-2 at

10    24.) This court declines petitioner's invitation to second-guess a state court's interpretation of

11    state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (holding that a federal habeas court is

12    bound by a state court's interpretation of state law); Polina v. Montgomery, 833 F. App'x 51, 53

13    (9th Cir. Oct. 21, 2020). Contrary to petitioner's belief, California law gives trial courts broad

14    discretion to reopen a case. Riley, 185 Cal. App. 4th at 764. This court recommends denying

15    habeas relief on this claim.

16    **II.**      **Evidence Regarding Petitioner's Prior Police Contacts and Dangerousness**

17        Petitioner also asserts that the trial court violated his rights under the Fifth, Sixth, and

18    Fourteenth Amendments when it admitted evidence that petitioner had repeated contacts with the

19    police and was extremely dangerous. (ECF No. 1-2 at 30–39.) He argues that this evidence was

20    irrelevant, unduly prejudicial, and inadmissible propensity evidence. Petitioner claims that

21    defense counsel's failure to object to this evidence constituted ineffective assistance of counsel,

22    and the appellate court's decision was contrary to, or involved an unreasonable application of,

23    clearly established federal law and an unreasonable determination of facts. (Id. at 31–37.)

24        **A. State Court Opinion**

25        Petitioner raised this claim in his direct appeal. In the last reasoned state court decision,

26    the California Court of Appeal considered and rejected the claim:

27

28

1

*Admission of Police Testimony Regarding Defendant*

2
3
4
5
6
7
8
9

As to his conviction for criminal threats, defendant contends the trial court erred in allowing testimony painting him as a dangerous, armed criminal with prior police contacts. He points to five instances of law enforcement testimony: (1) there was concern about going onto defendant's property because he has "been known to carry guns," and there had been past contacts with him at his property; (2) "[t]here had been other incidents" at his house, and police reports indicated that walking onto his property and knocking on the door would not be prudent; (3) a ruse was used because police had prior knowledge that firearms were involved, and they wanted to avoid a barricade situation; (4) a shotgun found on his property was pointed toward the driveway so if a person were to pick it up, it would already be pointed at "somebody like me coming up the driveway"; and (5) there had been episodes in the past where an officer had contacted defendant, and there had been other people on the property.

10
11

Defendant argues the evidence should have been excluded as unduly prejudicial and tending to evoke emotional bias under Evidence Code section 352.

12
13
14

At the outset, the challenge is forfeited on appeal for failure to object to the testimony at trial. (See *People v. Dykes* (2009) 46 Cal.4th 731, 756 [trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal].)

15
16
17
18

Anticipating that conclusion, defendant contends his trial counsel rendered ineffective assistance in failing to object. He argues there was no tactical advantage to not objecting. And, as to the criminal threats count, the testimony caused the jury to disregard evidence of his mental illness and conclude he formed specific intent to have his statements taken as a threat.

19
20
21
22

To establish ineffective assistance of counsel, a defendant must show his counsel's performance was deficient as measured against a reasonably competent attorney and that deficient performance prejudiced defendant in that it "'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) Here, defendant can do neither.

23
24
25
26
27
28

First and foremost, an Evidence Code section 352 objection would have been futile. (*People v. Thompson, supra*, 49 Cal.4th at p. 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].) Given the state of the evidence, the probability of undue prejudice was exceedingly low. (See Evid. Code, § 352; *People v. Riggs* (2008) 44 Cal.4th 248, 290 [generally, evidence is substantially more prejudicial than probative if it poses an intolerable risk to the proceedings' fairness of the outcome's reliability].) The challenged testimony was relevant to the circumstances of the arrest, which gave rise to the resisting arrest count. And the testimony was no more prejudicial than defendant's own statements and actions, which demonstrated officers had cause to be concerned. Defendant

14

told an officer, "he was tired of people fucking with him," "and if it didn't stop, somebody may wind up dead." He threatened the beating victim and his family. When he was served with a restraining order, he told an officer that he would not relinquish his guns. And the jury was told of two serious beatings by him.

Further, defendant cannot establish prejudice from counsel's failure to object. Defendant testified to always having a gun on his hip. He mentioned having been to jail 20 times and that all the deputies knew him. He admitted leaving threatening voicemails and severely beating his fiancée.

The jury was instructed that it could consider defendant's mental disorder in considering specific intent. Thus, under the circumstances there was not a reasonable probability that the absence of the officers' testimony regarding contacts with defendant, the danger of going onto his property, and the orientation of the shotgun would result in a more favorable outcome. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 48 [prejudice is measured by a reasonable probability of a more favorable outcome].)

(ECF No. 1-2 at 51–53.)

**B. Discussion**

To state an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). For the deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. For the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations omitted); see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007). When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." Richter, 562 U.S. at 105.

Petitioner contends that his counsel's failure to object to five pieces of inadmissible and unduly prejudicial evidence constitutes ineffective assistance of counsel. This argument fails. State law determines whether evidence is admissible. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). The state appellate court found that the evidence was admissible. (ECF No. 1-2 at 51–53 (holding that defense counsel's objection would have been futile because evidence was relevant and the probability of prejudice was low).) The state court's interpretation of state law is binding on this federal habeas court. See Bradshaw, 546 U.S. at 76; Polina, 833 F. App'x at 53.

Assuming the evidence was inadmissible, errors of state law do not warrant federal habeas relief. Estelle, 502 U.S. at 67; see also Romano v. Oklahoma, 512 U.S. 1, 10 (1994) ("That the evidence may have been irrelevant as a matter of state law, however, does not render its admission federal constitutional error."); Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995). A state court's erroneous evidentiary ruling is grounds for federal habeas corpus relief only if it made the state proceedings so fundamentally unfair as to violate due process. See Jammal v. Van de Kamp, 926 F.2d 918, 919–20 (9th Cir. 1991). But "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir. 2021); Nava v. Diaz, No. 18-16165, 816 F. App'x 192, 193 (9th Cir. Aug. 12, 2020). Because the Supreme Court has not clearly decided whether the admission of irrelevant or unduly prejudicial evidence constitutes a due process violation sufficient to warrant habeas relief, Holley, 568 F.3d at 1101, this court cannot conclude that the state appellate court's ruling was contrary to, or an unreasonable application of, clearly established federal law. See generally, Lopez v. Smith, 574 U.S. 1, 6 (2014) ("We have before cautioned the lower courts—and the Ninth Circuit in particular—against 'framing our precedents at such a high level of generality.'") (internal citation omitted); Wright v. Van Patten, 552 U.S. 120, 126 (2008); Carey v. Musladin, 549 U.S. 70, 77 (2006); Bradford v. Paramo, No. 2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6–7 (C.D. Cal. Nov. 12, 2020) (citing cases).

////

16

Even if this court were able to reach the merits of petitioner's ineffective assistance of counsel claim, it would fail. "An attorney's failure to object to the admission of inadmissible evidence is not necessarily ineffective." Morris v. State of Cal., 966 F.2d 448, 456 (9th Cir. 1991); see also Jackson v. Brown, 513 F.3d 1057, 1082 (9th Cir. 2008); Weygandt v. Ducharme, 774 F.2d 1491, 1493 (9th Cir. 1985) (finding that counsel's failure to object was not prejudicial given the totality of the evidence). "We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable representation." Morris, 966 F.2d at 456. In light of the record as a whole, this court concludes that the defense counsel's failure to object was not deficient or prejudicial. The five pieces of evidence petitioner now challenges—petitioner being known to carry guns, prior safety issues to police at the property, firearms at the property, a hidden shotgun pointed at the driveway, and other people on the property —are relevant to the resisting arrest charge, as the state appellate court found. This evidence was consistent with petitioner's testimony and other trial testimony. Petitioner testified that his firearm "[a]lways is on my hip" and that his shotgun is either outside his house or in bed with him. (ECF No. 16-3 at 96–97; ECF No. 16-2 at 110 (officer testified that petitioner had a gun on his waistband at time of arrest). Petitioner admitted to threatening to "kill you and your family," "[y]ou understand me, you pieces of fucking shit." (ECF No. 16-3 at 106, 126–27.) He told the jury he had been in jail 20 times before and all the deputies knew him. (Id. at 110.) When the officer came to arrest him and told him not to run, petitioner testified that he ran up to the trailer to get his shotgun. (Id. at 120, 129; see also ECF No. 16-2 at 111–12.) Petitioner also admitted to beating up his fiancée. (ECF No. 16-3 at 135–36.) Under the totality of the evidence, this court agrees with the state appellate court that defense counsel's failure to object does not amount to ineffective assistance of counsel. Petitioner's claim does not meet the exacting standard for habeas relief under either § 2254(d)(1) or (2).

Lastly, petitioner argues that the trial court's admission of propensity evidence violated his right to due process. (ECF No. 1-2 at 38). "'The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'" Holley, 568 F.3d at 1101 (citations omitted). "Only if there are *no* permissible inferences the jury may draw

from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" <u>Jammal</u>, 926 F.2d at 920 (citing <u>Kealohapauole v. Shimoda</u>, 800 F.2d 1463, 1465 (9th Cir. 1986)). This only occurs when the admission of evidence "had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993); <u>see also</u> <u>United States v. LeMay</u>, 260 F.3d 1018, 1026 (9th Cir. 2001) ("The introduction of relevant evidence, by itself, cannot amount to a constitutional violation. Likewise, the admission of prejudicial evidence, without more, cannot be unconstitutional.") For the same reasons discussed above, considering the entire trial record, the evidence did not have a substantial and injurious effect on the jury. This court recommends denying habeas relief on this claim as well.

## CONCLUSION

Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state court decision on any claim was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts.

Thus, it is RECOMMENDED that petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

////

////

1         In the objections, the party may address whether a certificate of appealability should issue

2    in the event an appeal of the judgment in this case is filed. <u>See</u> Rule 11, Rules Governing § 2254

3    Cases (the district court must issue or deny a certificate of appealability when it enters a final

4    order adverse to the applicant).

5    Dated:  August 19, 2021

6

7

   DLB7;

8       PATH

                                  DEBORAH BARNES

                              UNITED STATES MAGISTRATE JUDGE